## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARTHA ANDREWS, et al.,** | : | **Civil No. 1:21-CV-869** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **D2 LOGISTICS, INC., et al.,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.    Statement of Facts and of the Case

This case, which comes before us for consideration of a motion to compel filed by the plaintiffs, (Doc. 32), arises out of an automobile accident that occurred on September 30, 2019. (Doc. 1-1). The circumstances surrounding this accident are described in a ten-page, thirty-one-paragraph complaint filed by the plaintiff. (Doc. 1-1). This complaint alleges that Defendant Dwaine Gibson was a professional driver employed by D2 Logistics, a New Jersey company. (Id.) On September 30, 2019, Gibson was traveling northbound on I-81 in Dauphin County, Pennsylvania, when he decided to make an illegal U-turn onto the southbound lanes of the highway. (Id., ¶¶ 7-8). In executing this illegal U-turn, it is alleged that Gibson's tractor trailer crossed both the left- and right-hand southbound lanes of the highway in front of a vehicle operated by Leonard Scott Andrews in which Martha Andrews was a front

seat passenger. The Andrews' car collided with the tractor trailer operated by Gibson and the Andrews had to be transported to the Milton Hershey Medical Center for treatment of multiple fractures and other injuries. (Id., ¶¶ 9-13, 16, 25). The plaintiffs have brought four claims against Gibson and his employer, D2 Logistics, lodging claims of negligence and recklessness against these defendants and seeking both compensatory and punitive damages. (Id., Counts I-IV).

It is against the backdrop of these allegations that the plaintiffs have filed this motion to compel. According to the plaintiffs:

> On March 9, 2022, Plaintiffs filed their first request for production of documents. Included in this request were requests for the following items:
>
> 1. Any statements or memoranda of Defendant Dwaine Gibson or any other employees of 02 Logistics, Inc . . . .
>
> 2. Any statement or memoranda of any witnesses to the accident . . . .
>
> 4. The Defendant D2 Logistics, Inc.'s complete in-house investigation file including all memos, reports, correspondence and email messages which related in any way to the happening or investigation of this incidence . . . .
>
> 5. Any root cause analysis performed of the incident in question . . . .
>
> 16. The entire insurance file, including any computer file, pertaining to any and all claims made by Plaintiffs from the date of Plaintiffs' accident. Said documents should include, but not [be] limited to, any and all correspondence from and sent to Defendants as well as all correspondence, memorandums, directives, interoffice memoranda, email messages, etc. from all claims representatives handling Plaintiffs' file.

(Doc. 33 at 2). In the instant motion, the plaintiffs seek to compel production of the documents sought in requests 1 and 16; namely, a statement prepared by D2's driver, Dwaine Gibson, on October 1, 2019, the day after this accident, as well as the entire insurance claim file in this case.

D2 opposes these requests arguing that the Gibson statement and insurance file were prepared in anticipation of litigation and therefore are cloaked in the work product privilege. (Doc. 36). D2 takes this sweeping view of the scope of the work product privilege even though it appears that D2 was first contacted by counsel for the plaintiffs on November 27, 2019,[1] two months after the accident, and this litigation actually commenced on April 1, 2021. While the parties present their contrasting views regarding relevance and privilege to us in a categorical fashion, they advance these contentions in a factual and evidentiary void without providing us with the contested documents for our *in camera* review or submitting a privilege log articulating the nature of these privilege claims.

In order to engage in a fully informed analysis of these relevance and privilege claims, as discussed below, this motion to compel will be granted, in part, in that we will order the defendant to submit the Gibson statement, and those portions of the

---

[1] See Doc. 36, at 3 n.2. We note that the defendant suggests in its pleading that it was first contacted by plaintiffs' counsel on November 27, *2017* but this date is certainly incorrect since it is nearly two years prior to the accident. From the context clues within this pleading we are operating under the assumption that this first contact took place in November of 2019, two months after the accident.

insurance claims file that it submits are privileged, along with a privilege log, to us for our *in camera* review.

## II.   <u>Discussion</u>

Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. <u>See</u> <u>Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc.</u>, 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing <u>Scott Paper Co. v. United States</u>, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J. 1996); <u>see also</u> <u>Hasbrouck v. BankAmerica Hous. Servs.</u>, 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles.

At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, prescribes certain limits to that discovery and provides as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b).

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits....Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

5

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Phila. Housing Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D. Kan. 2009). Likewise, "[i]n deciding whether a federal privilege against discovery exists, . . . the objecting party ha[s] the burden of establishing the privilege." Bayges v. Se. Pennsylvania Transp. Auth., 144 F.R.D. 269, 271 (E.D. Pa. 1992). Indeed, because the assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," In re Chevron Corp., 633 F.3d 153, 164 (3d Cir. 2011), it is well established that, " '[t]he burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.'" Matter of Grand Jury Empanelled February 14, 1978, 603 F.2d 469, 474 (3d Cir. 1979) (quoting United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978)).

In this case, as we understand it, the defendants object to the production of Mr. Gibson's statement and the entire insurance claim file based upon an assertion

that these records are cloaked by the work product privilege. The work product

privilege is a creature of federal law, see Fed. R. Civ. P. 26(b) (3)(A), and "shelters

the mental processes of the attorney, providing a privileged area within which he can

analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658,

661-62 (3d Cir. 2003).    As the Third Circuit has explained:

> The purpose of the work-product doctrine differs from that of the
> attorney-client privilege . . . . [T]he attorney-client privilege promotes
> the attorney-client relationship, and, indirectly the functioning of our
> legal system, by protecting the confidentiality of communications
> between clients and their attorneys.   In contrast, the work-product
> doctrine promotes the adversary system directly by protecting the
> confidentiality of papers prepared by or on behalf of attorneys in
> anticipation of litigation.   Protecting attorneys' work product promotes
> the adversary system by enabling attorneys to prepare cases without
> fear that their work product will be used again their clients.

Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1427-28

(3d Cir. 1991).   Furthermore,

> The doctrine is an intensely practical one, grounded in the realities of
> litigation in our adversary system.   One of those realities is that
> attorneys often must rely on the assistance of investigators and other
> agents in the compilation of materials in preparation for trial.   It is
> therefore necessary that the doctrine protect material prepared by agents
> for the attorney as well as those prepared by the attorney himself.

United States v. Nobles, 422 U.S. 225, 238-39 (1975) (footnote omitted).

Given these animating principles, Rule 26(b)(3) shields from discovery

"documents and tangible things that are prepared in anticipation of litigation or for

trial by or for another party or its representative (including the other party's attorney,

consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The

rule also establishes two categories of protected work product: fact work product

and opinion work product. "Fact work product is discoverable only upon a showing

[of] 'substantial need' and by demonstrating that one cannot otherwise obtain the

'substantial equivalent' of such materials without 'undue hardship.'" In re

Linerboard Antitrust Litig., 237 F.R.D. 373, 381 (E.D. Pa. 2006) (quoting Fed. R.

Civ. P. 26(b)(3)). Opinion work product, "which consists of 'mental impressions,

conclusions, opinions, or legal theories of an attorney,' is afforded almost absolute

protection" and it "is discoverable 'only upon a showing of rare and exceptional

circumstances.'"   Linerboard, 237 F.R.D. at 381 (quoting Cendant, 343 F.3d at

663).

When examining privilege claims, we must be mindful of two other legal

tenets. First, while recognizing the value served by these privileges, courts must be

mindful that the privileges obstruct the truth-finding process and should, therefore,

be "applied only where necessary to achieve its purpose." Wachtel, 482 F.3d at 231;

see also Westinghouse Elec. Corp., 951 F.2d at 1423. Finally, when addressing legal

questions regarding whether the attorney client or work product privileges apply to

particular documents, we are cautioned to eschew any categorical approach which

cloaks or rejects the privilege in a wholesale fashion without regard to the specific

content of particular documents. Instead, "claims of . . . privilege must be asserted

document by document, rather than as a single, blanket assertion." United States v. Rockwell Int'l, 897 F.2d 1255, 1265 (3d Cir. 1990).

Because the defendants, as the proponent of the privilege bear the burden of proof on claims of privilege, it is often critically important that any privilege log adequately outline the basis of the privilege claim. On this score, we have described the legal requisites of a valid privilege log in the following terms:

> The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between...individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected. Bowne, 150 F.R.D. at 474 (citations omitted); see also von Bulow, 811 F.2d at 146; In re Grand Jury Subpoena Dtd. Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984). United States v. Constr. Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996).

Farkas v. Rich Coast Coffee, Corp., No. 1:14-CV-272, 2016 WL 4611427, at *4 (M.D. Pa. Sept. 6, 2016).

The necessity of an adequate privilege log is particularly important when considering discovery demands and work product claims like those made here which entail the entirety of an insurance claims file. With respect to such insurance files, it is well-settled that:

> [M]aterials prepared in the ordinary course of business are not protected. See Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1260 (3d Cir. 1993); see also Mattison v. Imbesi, 1998 WL 720061, at *2 (E.D. Pa. Oct. 6, 1998)("it is equally clear that Rule 26(b)(3) was not intended to protect all insurance claim files from discovery")(citation and internal quotation marks omitted). Because insurance companies are required to evaluate claims made by their insureds in the ordinary course of their business, "discovery disputes involving an insurance company's claims file often present problems for the parties." Borgia v. State Farm Mut. Auto. Ins. Co., 2014 WL 4375643, at *3 (E.D. Pa. Sept. 3, 2014)(citing Garvey v. Nat'l Grange Mut. Ins. Co., 167 F.R.D. 391, 394 (E.D. Pa. 1996)). An insurance company "cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it . . .." Shaffer v. State Farm Mut. Auto. Ins. Co., 2014 WL 931101, at *2 (M.D. Pa. Mar. 10, 2014) (citation omitted); Robertson, 1999 WL 179754, at *3 (same). Nevertheless, . . .  "[a]t some point in its investigation . . . an insurance company's activity shifts from mere claims evaluation to an anticipation of litigation." Garvey, 167 F.R.D. at 394.

Solano-Sanchez v. State Farm Mut. Auto Ins. Co., No. CV 19-4016, 2021 WL 229400, at *7 (E.D. Pa. Jan. 22, 2021).

Given the fact-specific nature of this inquiry, these determinations of relevance and privilege cannot be made in the abstract. Rather, they must entail an informed evaluation of the content and factual context of the disputed, and arguably privileged, documents. Recognizing these simple truths, this motion to compel will be granted, in part, in that we will order the defendant to submit the Gibson statement, and those portions of the insurance claims file that it submits are privileged, along with a privilege log, to us for our *in camera* review.

An appropriate order follows.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: September 6, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARTHA ANDREWS, et al.,** | : | **Civil No. 1:21-CV-869** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **D2 LOGISTICS, INC., et al.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 6th day of September 2023, in accordance with the accompanying Memorandum Opinion, the Plaintiffs' Motion to Compel, (Doc. 32), is GRANTED in part in that on or before **<u>September 27, 2022</u>**, the defendant will submit the Gibson statement, and those portions of the insurance claims file that it asserts are privileged, along with a privilege log, to us for our *in camera* review.

<u>s/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge